UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMOS J. CORMIER JR | * | QUI TAM COMPLAINT |
| Relator/Plaintiff | * | CASE #: 12-2448 |
| v. | * | SECTION: SECT. I MAG. 4 |
| THE PLAQUEMINES PARISH GOVERNMENT | * | FILED UNDER SEAL |
| Defendant | * | |

## QUI TAM COMPLAINT

NOW ENTER before this court AMOS CORMIER JR., (Relator) through undersigned counsel and with respect presents the following:

**PLAINTIFF**

Amos J. Cormier Jr., Relator is and has been a resident of Plaquemines Parish Government, State of Louisiana, since birth.

Relator was a member of the governing authority for the Parish of Plaquemines, the Plaquemines Parish Council, the legislative policy making branch of the Plaquemines Parish Government, for the years 2000-2008.

**DEFENDANT**

The Plaquemines Parish Government, the local government for the Parish of Plaquemines under the laws of the state of Louisiana, as composed since 1986 and as successor to the Plaquemines Parish Commission Council and as successor to various levee districts created by

1

the Louisiana Legislature and incorporated into the Plaquemines Parish Commission Council.

The Plaquemines Parish Government hereafter is referred to by the abbreviation PPG.

## JURISDICTION AND VENUE

Subject matter jurisdiction is founded on the False Claims Act, 31 U.S.C. 3729-33. Personal jurisdiction and venue are proper as the actions complained of took place in the Eastern District of Louisiana and the defendant is situated within the area comprising the Eastern District of Louisiana.

## NATURE OF ACTION

This action is brought on behalf of the United States to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729-33 and to recover all available damages and other monetary relief under state law, the common law or equitable theories, including but not limited to unjust enrichment, fraud, recoupment of overpayments, detrimental reliance, breach of obligations, malfeasance, misfeasance and nonfeasance.

The following claims are based on PPG's failure to act and false claims and statements made in and pursuant to certain obligations, reports, meetings, decision-making procedures, documentation, analyses and oral statements/representations, all the while PPG had overt and direct knowledge, or covert and indirect knowledge, or should have had knowledge, that the foregoing acts were false, fraudulent, a sham, misleading, and/or designed to obfuscate the true and correct state of affairs that existed and that was hidden, as hereafter articulated in detail.

PPG misled federal agencies including but not limited to the U.S. Army Corps of Engineers and the Federal Emergency Management Agency.

PPG is the local sponsor pursuant to conventional obligation and federal law with respect to certain levee projects undertaken by the U.S. Army Corps of Engineers, an agency of the

United States Government which in turn is charged under Federal law to enter into agreements with local governments such as PPG in order that the levee projects are maintained by the local sponsors. PPG expressly represented an ability to carry out PPG's obligations pursuant to agreement with the United States Government, as was set out in written agreements with the U.S. Government beginning the year 1964, which are in effect and have never been cancelled or extinguished.

PPG also has an independent authority and obligation under Louisiana law to enter into, and has entered into, obligations with the United States of America to build and maintain levees.

Relator has learned through the course of independent research of conduct by PPG which violated the Federal False Claims Act resulted in the expenditure of federal funds by federal agencies which should not have occurred or would have been less than which had occurred.

Relator was a member of the PPG governing authority and in said capacity participated in the deliberations, acting on advice of officials and employees of PPG, which resulted in underfunding or in not funding the obligations of PPG with respect to levee maintenance and the diversion of funds dedicated to levee building and maintenance to other projects in violation of state law and written assurances to the U.S. Government.

Relator is an "original source" who possessed knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

Relator affirmatively states there has been no disclosure by the PPG of a public nature whatsoever as to the conduct which violated 31 USC 3729, and affirmatively states PPG has with intent engaged in an effort to suppress public knowledge of violations of 31 USC 3729.

The conduct of PPG is in violation of 31 USC 3729 and specifically without limitation,

(a)(1)(A), (B), (D) and (G).

In sum, and as more particularly set out in the Counts within this Complaint, PPG has engaged in the following conduct which violates the "Qui Tam Act": (1) knowingly made, uses or caused "to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;" (2) possessed or controlled property that results in a loss to the Government; (3) being "authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government," making or delivering "the receipt without completely knowing that the information on the receipt is true;" and (4) "knowingly made, used or caused to be made or used, a false record or statement to avoid paying the full amount due the Government."

**COUNT ONE**

(A) PPG has entered into an Act of Assurance, dated March 6, 1964 (Attachment A), whereby PPG agreed to maintain certain levees built in a cooperative venture with the U.S. Government (Levees), pursuant to Act of Congress.

(B) PPG represented to the US Government that PPG was capable of fulfilling the obligations called for in the Act of Assurance.

(C) did not undertake required routine maintenance on the Levees required under the Act of Assurance with the result that the height of the Levees decreased over time.

(D) PPG's refusal to undertake required routine maintenance violated the conditions of the Act of Assurance and violated 33 USC 701c which required PPG to "maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army."

(E) PPG also violated regulations prescribed by the Secretary of the Army, including but not limited to U.S. Army Corps of Engineers Regulation No. ER 1150-2-301 and Regulation No. ER

1130-2-530, requiring PPG to undertake repair, replacement, and rehabilitation under maintenance responsibilities for the Levees. According to the regulations, PPG's maintenance is considered to be deficient when these requirements have not fulfilled.

(F) Federal funds were expended in rebuilding the Levees which would not have been required if PPG had carried out the obligations required under Federal regulations pursuant to USCA Title 33, Chapter 15 Sec. 701c and as all as part of the obligations required of PPG under the various acts of assurance previously recited.

**COUNT TWO**

(A) All of the allegations set forth in the foregoing Count is re-adopted in their entirety.

(B) PPG was also obligated to maintain the levees by reason of Federal law, including USCA Title 33, Chapter 15 Sec. 701n, which requires PPG to maintain the levees "if, in the normal course of usage, the structure becomes structurally unsound and is no longer fit to provide the level of protection for which the structure was designed."

(C) PPG was also obligated under Title 33 of the Code of Federal Regulations, Sec. 203.83 (a), to engage in required maintenance of the Levees which included "restoring normal levee or dune height after subsidence." The relevant text of Sec. 203.83(a) follows:

> Maintenance deficiencies. Rehabilitation, Emergency Water, Post Flood Response, and Advance Measures authorities may not be used to correct deferred or deficient maintenance. Such correction must be accomplished by, or at the expense of, local interests. This may include restoring normal levee or dune height after subsidence ....

(D) PPG knew or should have known that the Levees were subsiding, yet PPG did not undertake required maintenance on the Levees with the result that the Levees subsided, so that the Levees were "no longer fit to provide the level of protection" for which the Levees were designed.

(E) PPG's refusal to undertake required routine maintenance violated federal law, including

5

USCA Title 33, Chapter 15 Sec. 701n.

(F) Federal funds were subsequently expended in rebuilding the Levees which would not have been required, or would have been greatly reduced expenditures, if PPG had carried out the obligations set out under Federal law, including USCA Title 33, Section 15, Sec. 701n, all as part of the obligations required of PPG under the various acts of assurance previously recited.

**COUNT THREE**

(A) All of the allegations set forth in the foregoing Counts are hereby re-adopted in their entirety.

(B) Pursuant to USCA Title 33, Chapter 15 Sec. 701n, PPG was in receipt of a manual describing the maintenance and upkeep responsibilities required of a non-Federal interest in order for the non-Federal interest to receive Federal assistance in the repair of Levees.

(C) PPG did not perform all maintenance and general upkeep of a levee on a regular and consistent basis required under the aforesaid manual, which included repair or rebuilding required in the normal course of usage.

(D) PPG's refusal to comply with the requirements of the manual resulted in the U.S. Government expending federal monies pursuant to USCA Title 33, Chapter 15 Sec. 701n, which otherwise would have not been spent or would have been spent in greatly reduced sums but for PPG's refusal to maintain the Levees.

**COUNT FOUR**

(A) All the allegations set forth in the foregoing Counts are hereby re-adopted in their entirety.

(B) As a result of PPG's refusal to maintain the Levees, the Levees were no longer fit at the time of Hurricanes Katrina and Rita to provide the level of protection for which the Levees were designed and flooding of areas occurred which otherwise would not have occurred or such flooding would have been greatly reduced.

(C) The U.S. Government expended federal monies to compensate victims for property damage in those areas of the Levees, which otherwise would have not been spent or would have been spent in greatly reduced sums but for PPG's refusal to maintain the Levees.

**COUNT FIVE**

(A) All the allegations set forth in the foregoing Counts are hereby re-adopted in their entirety.

(B) PPG was required under P.L. 84-99 and 33 CFR §203.83(a) to carry out maintenance of the Levees.

(C) As a result of PPG's refusal to maintain the Levees, as required, pursuant to USCA Title 33, Chapter 15 Sec. 701c, the Levees were no longer fit at the time of Hurricanes Katrina and Rita to provide the level of protection for which the Levees were designed and flooding of areas occurred which otherwise would not have occurred or such flooding would have been greatly reduced.

(D) Federal funds under rehabilitation, emergency water and post flood response authorities after Hurricanes Katrina and Rita were spent to restore Levees notwithstanding PPG's violations of P.L. 84-99 and 33 CFR §203.83(a) with respect to PPG's refusal to carry out maintenance of the Levees.

**COUNT SIX**

(A) All of the allegations set forth in the foregoing Counts are hereby restated in their entirety.

(B) PPG, as revealed in the course of investigation, has engaged in a systematic diversion of funds dedicated under law to levee maintenance since at least 1986. The result of this systematic (and unlawful) diversion of funds has resulted in diminished or in some cases no funding for maintenance of Levees required under Federal Law and expressly required under the Act of Assurance of March 6, 1964.

7

(C) As a result of PPG's systematic diversion of funds which were statutorily dedicated to maintain the Levees, the Levees were no longer fit at the time of Hurricanes Katrina and Rita to provide the level of protection for which the Levees were designed and flooding of areas occurred which otherwise would not have occurred or such flooding would have been greatly reduced.

(D) PPG's systematic diversion of funds which were statutorily dedicated to maintain the Levees resulted in the U.S. Government expending federal monies which otherwise would have not been spent or would have been spent in greatly reduced sums but for PPG's refusal to maintain the Levees.

**COUNT SEVEN**

(A) All of the allegations set forth in the foregoing Counts are hereby restated in their entirety.

(B) PPG had an express affirmative obligation under the Act of Assurance, dated March 6, 1964, to give at least annual warnings to those residents of Plaquemines Parish in areas protected by the Levees that the Levees may not provide full protection to the affected areas.

(C) The apparent intent of this required warning was so that residents could undertake actions to reduce or prevent floodwater damage to property.

(D) PPG never gave any such annual warning to the residents of areas protected by the Levees.

(E) The resulting refusal of PPG to annually warn the residents as required by the Act of Assurance had the effect of deluding the public into a false sense of security such that residents did not undertake actions which would have reduced or eliminated the damages resulting from flooding.

(F) One result of the refusal of PPG to comply with the law and previously mentioned Act of Assurance was to burden the public fisc, as there were greater outlays of federally backed flood

insurance than would have been necessary if PPG had undertaken its obligations under law.

(G) The refusal of PPG to comply with the requirement of the Act of Assurance, and the resulting increased damages from deluding the public into a false sense of security, resulted in greater expenditures of Federal funds to compensate the public affected by flood damage which expenditures would not have been made, or in lesser amounts, but for PPG's refusal to carry out express affirmative obligations under Act of Assurance.

**COUNT EIGHT**

(A) All of the allegations set forth in the foregoing Counts are hereby restated in their entirety.

(B) The Parish of Plaquemines is a participating area in the federally backed flood insurance program.

(C) PPG had a duty to certify levee heights under 44 CFR 65.10 as meeting the 1% annual chance exceedance chance flood, with certification by engineering professionals.

(D) PPG knew that as a result of neglecting the Levees in Plaquemines Parish, during the period 1993-2005, that the levees could not protect against 1% annual chance exceedance chance flood for the period 1993-2005.

(E) Upon information and belief, reasonably based on the facts as set out in Counts One Through Seven herein, any certification PPG provided to agencies of the U.S. Government with respect to PPG meeting minimum standards for levee maintenance imposed under 44 CRR 65.10 were demonstrably false since PPG was undertaking no maintenance on the levees to maintain levee height.

(F) Upon information and belief, reasonably based on the facts as set out in Counts One Through Seven herein, any certification PPG provided to agencies of the U.S. Government with respect to levee heights protecting against 1% annual chance exceedance chance flood for the period 1993-

9

2005 were fraudulent as PPG was not maintaining levees to their proper heights as required by federal and state law.

(G) As a result of this fraudulent reporting, the National Flood Insurance Program incurred greater payouts to insureds during Hurricane Katrina and Rita than the National Flood Insurance Program would have incurred if PPG had performed obligations under law.

**COUNT NINE**

(A)At all times PPG has deliberately and willfully refused to appropriate funds to meet obligations under federal law and to meet obligations under contract pursuant to federal law, which nonfeasance and malfeasance is all the more manifest as PPG is obligated under state law and federal law to utilize funds dedicated to levee purposes solely for levee purposes.

(B) PPG has deliberately and willfully violated state and federal law by diverting the funds dedicated to levee construction and maintenance to other uses which have nothing to do with levee construction and performing obligations under federal law and contract.

**COUNT TEN**

(A) Such other actions as will be revealed after due investigation by federal agencies and/or discovery in this litigation.

### COMPLIANCE WITH QUI TAM FILING DISCLOSURE STATEMENT

Relator files the disclosure statement required under law as an attachment which is under seal.

WHEREFORE, Relator prays that a copy of the complaint with attachments shall be served on the U.S. Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant PPG until the court so orders.

WHEREFORE, this complaint be served afterwards on defendant PPG, and upon failure of PPG to answer in 20 days as afforded under law, or after due proceedings are held, Relator prays that judgment be rendered in favor of the United States against the defendant, PPG, for the amount of the damages to the United States, multiplied as required by law, recoupment of amounts unjustly paid or those amounts by which defendant was unjustly enriched or by which defendant illegally obtained monies, and such civil penalties as required by law, for all accounting, for any required declaratory and injunctive relief, together with interest, costs, expenses and attorney fees, together with all amounts due Relator under the False Claims Act.

Respectfully submitted,

*/s/Melvin J. Burmaster*

Melvin J. Burmaster LSBA 19508
3520 General DeGaulle, Ste 1035
New Orleans, La. 70114
504 415-4697
504-812-1100